DICKINSON, Presiding Justice,
for the Court:
¶ 1. The Mississippi Legislature created the Mississippi Workers’ Compensation Self-Insurers Guaranty Association (“SIGA”) to pay workers’ compensation claims on behalf of insolvent self-insured employers; and it created the Mississippi Insurance Guaranty Association (“MIGA”) *2 to pay claims on behalf of insolvent insurers. After an insolvent employer’s insurance company also became insolvent, SIGA made workers’ compensation payments to an injured worker. SIGA sued MIGA for reimbursement of those payments, and the trial court ordered reimbursement. But because SIGA’s claim against MIGA does not fall within the statutory definition of a “covered claim,” we reverse.
BACKGROUND
¶ 2. The Legislature abolished most lawsuits by injured employees against their employers, and provided compensation through the workers’ compensation statutes. Most employers cover all their workers’ compensation claims filed against them with insurance; some “self-insure,” that is, they pay the workers’ compensation claims without benefit of any insurance coverage; and some employers — such as B.C. Rogers Poultry, Inc., the employer involved in today’s case — self-insure up to a certain limit and then cover claims that exceed that limit with insurance.
¶ 3. The Legislature created MIGA to provide for the payment of benefits due under insurance policies issued by insurance companies that become insolvent, (with statutory restrictions);[1] and it created SIGA to pay workers’ compensation benefits on behalf of self-insured employers that become insolvent.[2] Today’s case presents the unusual scenario in which both a partially self-insured employer and its insurance company became insolvent while a workers’ compensation claim was pending.
¶ 4. After Bobby Warren was injured on the job, his self-insured employer, B.C. Rogers Poultry, Inc., paid $225,000 in workers’ compensation benefits and then turned the claim over to its excess insur-anee carrier, Reliance National Indemnity Company.
¶ 5. Reliance paid $129,205.73 in benefits but then became insolvent, requiring Rogers again to assume responsibility for the claim. Rogers paid an additional $167,419.53, but then it became insolvent and ceased payments, prompting SIGA to step in and pay Warren’s claim. After paying benefits exceeding $100,000, SIGA suggested that MIGA consider stepping into Reliance’s shoes and pay the amount Reliance should have paid, effectively reimbursing SIGA. MIGA refused, so SIGA filed suit. Meanwhile, Warren sued the other driver from the accident for personal injuries and collected more than $4 million from uninsured motorist (“UM”) carriers.
¶ 6. SIGA argued to the trial court that MIGA should reimburse it for the money it paid to Warren, because MIGA had a statutory duty to step into Reliance’s shoes when Reliance became insolvent. MIGA responded that it was not obligated to pay SIGA, because SIGA was not a “claimant” or “policyholder” and did not have a “covered claim” under its laws. MIGA also argued that the Reliance excess policy was not “direct insurance” as to SIGA.
¶ 7. Finally, MIGA argued that any reimbursement SIGA might be entitled to must be reduced, or offset, by the amount Warren received in UM benefits — effectively wiping out the claim. SIGA responded that, because it stepped into Rogers’s shoes, it should be paid what Rogers would have been paid had Reliance not become insolvent.
¶ 8. SIGA filed a motion for summary judgment, which the trial court granted, holding that the Reliance excess insurance policy was “direct insurance” and that *3 SIGA had a “covered claim.” The trial court also found that SIGA’s claim could not be offset by the amount recovered by Warren under the UM policies.
¶ 9. MIGA appealed, asking us to consider whether MIGA is obligated to pay SIGA; whether MIGA is entitled to a reduction, setoff, or credit for the amount Warren received from UM policies; and whether SIGA is entitled to an award of interest and costs. Because we hold that MIGA is not obligated to pay SIGA, we decline to address the other issues.
ANALYSIS
¶ 10. We follow our usual standards of review: Summary judgment is appropriate where “there is no genuine issue as to any material fact” and “the moving party is entitled to a judgment as a matter of law.”[3] We review motions for summary judgment de novo,[4] and although we view the evidence in' the light most favorable to the nonmoving party,[5] statutory interpretation is a question of law and must be reviewed de novo.[6]
¶ 11. The Legislature created MIGA to “provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer... ,”[7] And according to Mississippi Code Section 83-23-107, we interpret MIGA’s laws according to MIGA’s statutory purpose.[8]
MIGA is not obligated to reimburse SIGA for its payments to Warren, because SIGA does not have a “covered claim.”
¶ 12. Under Mississippi Code Section 83 — 23—115(1)(a), MIGA is “obligated to the extent of the covered claims existing prior to the determination of insolvency....”[9] The statute further provides that “[i]n no event shall the association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises.”[10] And Mississippi Code Section 83 — 23—109(f) defines “covered claim” as
an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this articles applies issued by an insurer, if such insurer becomes an insolvent insurer.... [11]
¶ 13. Thus, to obligate MIGA to pay SIGA, SIGA must be a claimant or policyholder with an unpaid claim. SIGA argues that its payments to Warren — in satisfaction of its obligation to take over Rogers’s workers’ compensation obligations — are unpaid claims. MIGA, however, argues that SIGA cannot have an “unpaid claim,” because SIGA is not a “claimant” or “policyholder” under the statute; we agree.
*4 ¶ 14. MIGA’s laws define “claimant” as “any insured making a first-party claim or any person instituting a liability claim....”[12] Here, Rogers was the named insured under the Reliance excess policy— not SIGA. SIGA, however, argues that, under Mississippi Code Section 71-3-163, it is “deemed the self-insurer to the extent of obligations on its covered claims and to such extent shall have all rights, duties and obligations of the individual self-insurer in default or insolvent group self-insurer in default as if such self-insurer were not in default.”[13] SIGA, therefore, argues that, because it was obligated to step into the shoes of Rogers, it also has a right to reimbursement under Rogers’s policy with Reliance as a claimant or policyholder; and since MIGA is obligated to step into Reliance’s shoes, MIGA should pay SIGA for payments made to Warren. But as this Court has explained, “an insolvent insurer’s shoes are not always a perfect fit.” [14]
¶ 15. The MIGA statutes must be interpreted according to the association’s purpose:
[T]o provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.[15]
¶ 16. MIGA’s purpose, though, is not achieved by ordering MIGA to reimburse SIGA, because doing so would not prevent financial losses to a claimant or policyholder. SIGA is not seeking money for Rogers (the actual claimant or policyholder); instead, it is seeking reimbursement for complying with its own statutory duties. While the dissent correctly observes that SIGA steps into Rogers’s shoes and inherits its rights and obligations, it overlooks the fact that — with respect to SIGA’s payment to Warren — Rogers has no outstanding rights or obligations. Rogers — were it not insolvent — would have no right of reimbursement for SIGA’s payments to Warren; so SIGA has no right of reimbursement and no unpaid claim. And no statutory provision allows, or requires, one guaranty association to pay another. SIGA and the dissent ignore the one avenue of reimbursement authorized by SIGA’s statute: “An association may recover from the self-insurer in default ... all amounts paid by such association on account of covered claims of employees of the member self-insurer in default....”[16]
¶ 17. SIGA is not an “insured making a first-party claim,” as the definition of “claimant” requires; instead, Rogers is the insured. Nor is SIGA “instituting a liability claim”; instead, it seeks reimbursement only. So MIGA’s statutes neither authorize nor obligate it to pay SIGA.
¶ 18. The dissent says that Rogers’s claim against Reliance remains unpaid. But we find nothing in the record before us concerning any claim Rogers has, or is asserting, against Reliance, MIGA, or anyone else. The claim presented today — and the only claim presented for our consider *5 ation — is SIGA’s claim against MIGA: a claim for payments SIGA made in fulfillment of its statutory duties. Any payment Rogers may have made — after Reliance’s insolvency — is not relevant to this appeal.
¶ 19. SIGA’s claim against MIGA is best characterized as an attempt at no-vation. Novation may occur where one debtor is substituted by another in a contract,[17] which requires an express agreement or implied assent.[18] Here, no evidence exists — and SIGA does not argue— that Rogers or Reliance expressly or implicitly assented to a novation. Simply because SIGA’s statute deems it the self-insurer does not mean that SIGA’s name is supplanted into Rogers’s contract with Reliance.
¶ 20. Contrary to the dissent’s assertion, our decision today does not favor the MIGA statutes over the SIGA statutes. MIGA’s authority to make payments is limited by the statutes that created it, and those statutes do not authorize it to reimburse SIGA. Because SIGA is not a claimant or policyholder with an unpaid claim, it does not have a “covered claim” under MIGA’s statute.
CONCLUSION
¶ 21. MIGA is not obligated to reimburse SIGA for SIGA’s statutorily obligated payments to Warren. Neither party has presented a genuine issue of material fact. Thus, MIGA is entitled to judgment as a matter of law. Accordingly, we reverse the trial court’s ruling and find that the trial court erred in granting SIGA’s motion for summary judgment and in denying MIGA’s motion for summary judgment. MIGA’s motion for summary judgment is granted.
¶ 22. REVERSED AND RENDERED.
WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, CHANDLER AND KING, JJ., CONCUR. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.

. Miss.Code Ann. § 83-23-103 (Rev.2011).

. Miss.Code Ann. § 71-3-153 (Rev.2011).

. Miss. R. Civ. P. 56(c).

. Crist v. Loyacono, 65 So.3d 837, 842 (Miss.2011).

. Id.

. Delta Reg’l Med. Ctr. v. Green, 43 So.3d 1099, 1100 (Miss.2010).

. Miss.Code Ann. § 83-23-103 (Rev.2011).

. Miss.Code Ann. § 83-23-107 (Rev.2011). The dissent incorrectly attributes the statute’s phrase "liberally construe” to this majority.

. Miss.Code Ann. § 83-23-115(1)(a) (Rev. 2011) (emphasis added).

. Id. (emphasis added).

. Miss.Code Ann. § 83-23-109(f) (Rev.2011) (emphasis added).

. Miss. Code Ann. § 83-23-109(c) (Rev. 2011).

. Miss.Code Ann. § 71 — 3—163(1 )(b) (Rev.2011) (emphasis added).

.Miss. Ins. Guar. Ass’n v. Blakeney, 54 So.3d 203, 206 (Miss.2011).

. Miss.Code Ann. § 83-23-103 (Rev.2011).

. Miss.Code Ann. § 71-3-169(2) (Rev.2011) (emphasis added).

. Miss. Ins. Guar. Ass’n v. MS Casualty Ins. Co., 947 So.2d 865, 871 (Miss.2006).

. Id.